BENJAMIN B. WAGNER
United States Attorney
LAUREL J. MONTOYA
KEVIN P. ROONEY
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>THANOUSONE VOLARAT,<br><br>Defendant. | ) | CASE NO. 1:11-CR-00303-DAD<br>CASE NO. 1:13-CR-00197-LJO<br>(Eastern District of California)<br><br>CASE NO. 1:16-CR-00087-DAD<br>(13-CR-205-SRU – District of Connecticut)<br><br>MEMORANDUM OF PLEA AGREEMENT PURSUANT TO RULE 11(C) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE<br><br>DATE: ~~TBD~~ June 27, 2016<br>TIME: 10:00 A.M.<br>COURT: FIVE<br>HON. DALE A. DROZD |

I.

INTRODUCTION

A. Scope of Agreement: The defendant acknowledges that he has been charged by Superseding Information 1:11-cr-00303-DAD, in the Eastern District of California with Conspiracy to Cultivate, Distribute and Possess with the Intent to Distribute 100 or more Marijuana Plants, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B), and Criminal Forfeiture, in violation of 18 U.S.C. 924(d), 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(a).

///

The defendant further acknowledges that he is charged by Indictment, 1:13-cr-00197-LJO, in the Eastern District of California, with Escape, in violation of 18 U.S.C. § 751(a).

The defendant further acknowledges that he has been charged by Indictment, 13-cr-205-SRU, in the District of Connecticut, with Conspiracy to Engage in Money Laundering, in violation of 18 U.S.C. § 1956(h), and Criminal Forfeiture, in violation of 18 U.S.C. § 982(a)(1).

This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California and the District of Connecticut (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Offices for the Eastern District of California and the District of Connecticut, cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

B. Court Not a Party: The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, the Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement. If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

II.

DEFENDANT'S OBLIGATIONS

A. Guilty Plea: The defendant will waive indictment and plead guilty to Count One: Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(B) (Superseding Information 1:11-cr-00303-DAD); and Title 18, United States Code, Section 751 (Indictment 1:13-cr-00197-LJO); and Title 18, United States Code, Section 1956(h) (Indictment 13-cr-205-SRU). Further, the defendant agrees to admit the forfeiture allegations alleged in all three (3) indictments. The defendant agrees that he is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

///

B. Defendant and the government agree that the amount of marijuana involved in the offense and readably foreseeable to the defendant was 2,170 plants. The defendant and the government further agree that this drug quantity yields a base offense level of 24 pursuant to U.S.S.G. §§ 2D1.1(c)(8) and that two levels are added under U.S.S.G. § 2S1.1(b)(2)(B) because the defendant is convicted under 18 U.S.C. § 1956(h) for a total offense level of 26.

C. The defendant and the government acknowledge the following: that the defendant has a serious medical condition(s) which necessitate care more appropriately provided by the Bureau of Prisons rather than the United States Marshals Service and that through this plea the defendant hereby irrevocably waives an arguably non-frivolous legal claim based upon the "Rohrabacher Amendment" (Consolidated and Further Continuing Appropriations Act of 2015, Pub. L. No. 113-235, tit. V, div. B, §538 (2014)). Based upon those considerations and pursuant to 18 U.S.C. § 3553, the government will recommend an initial term of imprisonment of 60 months for the defendant's convictions pursuant to 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B); and 18 U.S.C. § 1956(h); and a consecutive initial term of imprisonment for his escape conviction pursuant to 18 U.S.C. § 751(a).

D. Defendant understands and agrees that he will not be allowed to withdraw his plea should the Court fail to follow the government's sentencing recommendation.

E. Forfeiture: The defendant understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

The defendant agrees to forfeit to the United States voluntarily and immediately all of his right, title, and interest to any and all assets seized in connection to the criminal charges and events giving rise to the Indictments and Superseding Information.

Defendant agrees that any assets seized or found to be connected to the criminal events and charges giving rise to the Superseding Information and Indictment, constitute property subject to forfeiture pursuant to 21 U.S.C. § 853.

Defendant agrees to fully assist the government in the forfeiture of any seized assets or assets later determined to be forfeitable pursuant to the Indictment and to take whatever steps are necessary to pass

clear title to the United States. Defendant shall not sell, transfer, convey, or otherwise dispose of any assets found to be connected to the criminal events charged in the Indictments.

Defendant agrees not to file a claim to any of the seized property in any civil proceeding, administrative or judicial, which may be initiated. Defendant agrees to waive his/her right to notice of any forfeiture proceeding involving this property, and agrees to not file a claim or assist others in filing a claim in that forfeiture proceeding.

The defendant waives the notice provisions of Fed. R. Crim. P. 7(c)(2) and 32.2(a), waives oral pronouncement of forfeiture at the time of sentencing and any defects in such pronouncement that pertain to forfeiture, and waives any defenses to forfeiture, including any defense predicated on the Ex Post Facto, Double Jeopardy, and Excessive Fines Clauses of the United States Constitution. The defendant knowingly and voluntarily waives any right to jury trial in any criminal or civil forfeiture proceeding.

F. Immigration Consequences: The defendant understands that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. Removal and other immigration consequences is the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea and regardless of any advice the defendant has received from his counsel or others regarding those consequences. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on those consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction or sentence, based on the immigration consequences of his guilty plea, conviction and sentence.

G. Defendant further acknowledges that his plea of guilty is voluntary and that no force, threats, promises or representations have been made to anybody, nor agreement reached, other than those set forth expressly in this agreement, to induce the defendant to plead guilty.

III.

THE GOVERNMENT'S OBLIGATIONS

A. Dismissals: The government agrees to move, at the time of sentencing, to dismiss without prejudice the Indictment in 1:11-CR-00303-DAD.

B. Recommendations:

1. Initial Term of Imprisonment: The government will recommend that an initial term of imprisonment of 60 months for the defendant's convictions pursuant to 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B); and 18 U.S.C. § 1956(h); and a consecutive initial term of imprisonment for his escape conviction pursuant to 18 U.S.C. § 751(a).

2. Acceptance of Responsibility: If the United States Probation Office determines that a two or three-level reduction in the defendant's offense level for his full and clear demonstration of acceptance of responsibility is appropriate under U.S.S.G. § 3E1.1, the government will not oppose such a reduction and will so move under § 3E1.1(b), so long as the defendant pleads guilty, meets with and assists the probation officer in the preparation of the pre-sentence report, is truthful and candid with the probation officer, and does not otherwise engage in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

IV.

ELEMENTS OF THE OFFENSE

A. The defendant has read the charges against him contained in the indictments, and those charges have been fully explained to him by his attorney. Further, the defendant fully understands the nature and elements of the crimes in the Superseding Information and Indictments, Superseding Information (1:11-cr-00303-DAD), Indictment (1:13-CR-00197-LJO) and Indictment (13-cr-205-SRU) to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

Superseding Information (1:11-CR-00303-DAD): The elements of the crime of Conspiracy to Cultivate, Distribute, And Possess with the Intent to Distribute Marijuana:

First, there was an agreement between two or more persons to commit the crime of cultivation, distribution, and possession with the intent to distribute marijuana;

Second, the defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it.

The defendant further understands that before a mandatory minimum sentence of five (5) years could be imposed on him in connection with the charge of conspiracy to cultivate, distribute, and possession with the intent to distribute marijuana, the government must prove each of the following facts beyond a reasonable doubt:

First, that the conspiracy involved the cultivation, distribution, and possession of 100 or more marijuana plants with the intent to distribute, and,

Second, that the defendant himself knew or could reasonably foresee that the conspiracy involved the actual cultivation, distribution, and possession of 100 or more marijuana plants with the intent to distribute.

The government must prove the following elements in order to prove the crime of Cultivation of Marijuana:

First, the defendant knowingly cultivated or manufactured marijuana, a controlled substance;

Second, the defendant knew it was marijuana or some other prohibited drug;

The government must prove the following elements in order to prove the crime of Distribution of Marijuana:

First, the defendant knowingly distributed marijuana, a controlled substance;

Second, the defendant knew it was marijuana or some other prohibited drug;

The government must prove the following elements in order to prove the crime of Possession of Marijuana with the Intent to Distribute:

First, the defendant knowingly possessed marijuana, a controlled substance;

Second, the marijuana was possessed with the intent to deliver it to another person.

Count One of the Indictment (1:13-CR-00197-LJO): The government must prove the following elements in order to prove the crime of Escape:

First, the defendant was in the custody of the United States Marshall's Service;

Second, the defendant was in custody awaiting trial or other disposition of a felony

criminal offense, said custody pursuant to a lawful order by a United States Magistrate Judge for the Eastern District of California; and

Third, the defendant knowingly and voluntarily left custody without permission.

Count One of the Indictment (13-cr-205-SRU): The government must prove the following elements in order to prove the crime of Conspiracy to Engage in Money Laundering are:

First, on or about the dates alleged in the Indictment, there was an agreement between two or more persons to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i); and

Second, the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose.

The government must prove the following elements in order to prove the crime of Money Laundering:

First, the defendant conducted a financial transaction involving property that represented the proceeds of illicit drug trafficking;

Second, the defendant knew that the property represented the proceeds of some form of unlawful activity; and

Third, the defendant knew that the transaction was designed in whole or in part to conceal or disguise the source of the proceeds, and the transaction was conducted with the intent to promote the carrying on of the drug trafficking.

V.

MAXIMUM SENTENCE

A. Maximum Penalty: The maximum sentence that the Court can impose for conspiracy to cultivate, distribute, and possess with the intent to distribute 100 or more marijuana plants is:

(a) Imprisonment.

Mandatory Minimum: Five (5) years.

Maximum: Forty years.

///

///

(b) Fine.

Mandatory Minimum: None.

Maximum: Five million dollars ($5,000,000.00).

(c) Both such fine and imprisonment.

(d) Term of Supervised Release.

Mandatory Minimum: Four (4) years.

Maximum: Life.

(Should the defendant violate any of the terms of his supervised release, he can be returned to prison for the lesser of 3 years or the term of supervised release actually imposed.)

(e) Penalty Assessment.

Mandatory: $100.00 for each count.

(f) Pursuant to 21 U.S.C. § 862, the defendant may become temporarily or permanently ineligible for any and all federal benefits[1] and, pursuant to 21 U.S.C. § 862a, shall be ineligible for the following government benefits:

(1) assistance under any State program funded under part A of title IV of the Social Security Act (42 U.S.C. § 601 et seq.);

(2) benefits under the food stamp program (as defined in section 3h of the Food Stamp Act) (7 U.S.C. § 2012(h)) or any State program carried out under the Food Stamp Act of 1977 (7 U.S.C. § 2011 et seq.).

Maximum Penalty: The maximum sentence that the Court can impose for Escape is:

(a) Imprisonment.

Mandatory Minimum: None.

Maximum: Five (5) years.

///

[1] The term "federal benefits" does not include any retirement, welfare, Social Security, health, disability, veterans benefit, public housing, or other similar benefit, or any other benefit for which payments or services are required for eligibility, but refers to the issuance of any grant, contract, loan, professional license, or commercial license provided by an agency or appropriated funds of the United States. 21 U.S.C. § 862(d)(1).

(b) Fine.

Mandatory Minimum: None.

Maximum: Two Hundred Fifty Thousand Dollars ($250,000.00).

(c) Both such fine and imprisonment.

(d) Term of Supervised Release.

Mandatory Minimum: none.

Maximum: Three (3) years.

(Should the defendant violate any of the terms of his supervised release, he can be returned to prison for 1 year or the term of supervised release actually imposed on each count, whichever is less.)

(e) Penalty Assessment.

Mandatory: $100.00 on each count.

Maximum Penalty: The maximum sentence that the Court can impose for Conspiring to Engage in Money Laundering is:

(a) Imprisonment.

Mandatory Minimum: None.

Maximum: Twenty (20) years.

(b) Fine.

The greater of $500,000.00 or twice the value of the property involved;

The defendant also is subject to the alternative fine provision of 18 U.S.C. § 3571.

The maximum fine that may be imposed on the defendant is the greatest of the following amounts:

(1) twice the gross gain to the defendant resulting from the offense;

(2) twice the gross loss resulting from the offense;

(3) $500,000; or

(4) twice the value of the property involved in the transactions.

(c) Both such fine and imprisonment.

///

///

(d) Term of Supervised Release.

Mandatory Minimum: none.

Maximum: Three (3) years.

(Should the defendant violate any of the terms of his supervised release, he can be returned to prison for up to two years or the term of supervised release actually imposed, whichever is less.)

(e) Penalty Assessment.

Mandatory: $100.00 on each count.

VI.

SENTENCING DETERMINATION

A. Statutory Authority: The defendant understands that the Court must consult the Federal Sentencing Guidelines (as promulgated by the Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551-3742 and 28 U.S.C. §§ 991-998, and as modified by United States v. Booker and United States v. Fanfan, 543 U.S. 220 (VI), 125 S.Ct. 738 (2005)) and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

VII.

WAIVERS

A. Waiver of Constitutional Rights: The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

B. Waiver of Appeal and Collateral Attack: The defendant understands that the law gives him a right to appeal his conviction and sentence. He agrees as part of his plea, however, to give up the right to appeal the conviction and the right to appeal any aspect of the sentence imposed in this case. He also specifically gives up his right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights. In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims

Notwithstanding the agreement in paragraph III. A. above that the government will move to dismiss counts against the defendant, however if the defendant ever attempts to vacate his guilty plea, dismiss the underlying charges, or reduce or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the right (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office. By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses he might have to the government's decision. In particular, he agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

C. Waiver of Attorneys' Fees and Costs: The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed

pursuant to this plea agreement and any charges previously dismissed).

VIII.

ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

IX.

APPROVALS AND SIGNATURES

A. Defense Counsel: I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

DATED: 6/8/16

Marc Days
Attorney for Defendant

B. Defendant: I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 6/8/16

X
THANOUSONE VOLARAT, Defendant

C. Attorney for United States: I accept and agree to this plea agreement on behalf of the government.

DATED: 6/9/2016

BENJAMIN B. WAGNER
United States Attorney
Eastern District of California

By:
LAUREL J. MONTOYA
Assistant U.S. Attorney

EXHIBIT "A"

Beginning on a date unknown but not later than October 1, 2010 and continuing to on or about September 7, 2011, in the State and Eastern District of California, defendant THANOUSONE VOLARAT conspired with Phonepithack Volarat, Adam Khamvongsay, and others, both known and unknown to the Grand Jury, to manufacture, distribute and possess with the intent to distribute marijuana and 100 or more marijuana plants.

Defendant THANOUSONE VOLARAT and the co-defendants moved to California to grow and distribute marijuana. Defendant THANOUSONE VOLARAT and the co-defendants distributed the marijuana grown with medical recommendations for profit and not for medicinal use. The distribution was both within the state and outside the state of California.

In June, 2011, defendant THANOUSONE VOLARAT and the co-defendants met with the owner of rural property located at 42271 Mineral Springs Road, Coalinga, CA and rented the property to grow marijuana. The owner stated the property was actually rented to THANOSOUNE VOLARAT but was told by him that he does not have good credit so they put the rental in co-defendant Khamvongsay's name. Defendant THANOUSONE VOLARAT and the co-defendants assisted workers in digging holes for the marijuana plants. On September 2, 2011, the defendant's marijuana grow was eradicated and 1,500 marijuana plants were removed. Several medical marijuana recommendations were found on the property and the persons who ostensibly held those recommendations were determined to be residing outside California.

On June 14, 2011, GPS precise location data showed a Cadillac Escalade driven by all three co-conspirators during the investigation traveled from 10424 N. Sinclair Circle to 2601 E. Olive Ave., Fresno, CA, a USPO shipping location. THANOUSONE VOLARAT mailed a parcel box to New Britain, CT. The return address on the box was for Michael Nguyen at 324 E. Shaw Avenue, Fresno, CA. When the box arrived in Connecticut, United States Postal Inspector Martin Vega obtained a federal search warrant for the parcel and seized approximately ten pounds of marijuana from it.

On August 9, 2011, law enforcement searched a property located at 22161 Road 211, Friant, CA. The property was rented by defendant THANOSOUNE VOLARAT and co-conspirator Khamvongsay in Khamvongsay's name to grow marijuana for distribution by the conspirators. Officers found a marijuana

grow operation and 463 marijuana plants including 50 starter plants were eradicated. Medical marijuana recommendations for persons determined to be residing outside the state of California were found. Co-defendant Khamvongsay hired workers and paid the expenses for the house and the marijuana grow operation on behalf of the conspiracy.

On September 7, 2011, law enforcement searched the residence located at 10484 Sinclair Circle, Fresno, CA where defendant THANOUSONE VOLARAT was living with the co-defendants. Processed marijuana and 47 marijuana plants were seized.

All the marijuana and marijuana plants described above were manufactured and possessed with the intent to distribute in furtherance of the conspiracy. At all relevant times, defendant THANOUSONE VOLARAT and his co-conspirators all knew that they were manufacturing and distributing marijuana and that marijuana was a controlled substance under Federal law.

****

On or about February 25, 2013, in the County of Fresno, State and Eastern District of California, defendant THANOUSONE VOLARAT was in custody pending trial or other disposition of pending felony charges against him in the United States District Court for the Eastern District of California. A Magistrate Judge had lawfully ordered defendant THANOUSONE VOLARAT to be held in the custody of the United States Marshal's Service. With the United States District Court's knowledge and consent, the Marshal's Service housed defendant THANOUSONE VOLARAT in the Fresno County, California jail. On or about February 25, 2013, defendant THANOUSONE VOLARAT knowingly and voluntarily left custody without permission from anyone in lawful authority.

More specifically, defendant THANOUSONE VOLARAT was taken to a facility in Fresno County for medical treatment and received permission to use a restroom alone. Inside that restroom, he slipped off a handcuff, unlocked the backdoor to the restroom, and fled the medical facility while still dressed in a prisoner's uniform. Defendant THANOUSONE VOLARAT remained out of custody until recaptured by the United States Marshalls Service in Los Angeles County, California.

****

Beginning on a date unknown but not later than October, 2009 and continuing to on or about September 7, 2011, in the District of Connecticut and elsewhere, defendant THANOUSONE VOLARAT

conspired with Phonepithack Volarat, Adam Khamvongsay, Ronald Khamvongsay, Sompatana Chanminaraj and others, both known and unknown to the Grand Jury, to conduct financial transactions affecting interstate commerce with the proceeds of their marijuana trafficking with the intent that these transactions would promote the further purchase, manufacture and distribution of marijuana and knowing that these transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the marijuana trafficking.

Since at least October 2009, defendant THANOUSONE VOLARAT and his co-conspirators were purchasing large quantities of marijuana from sources in Oregon and California. By the end of 2010, defendant THANOUSONE VOLARAT and his co-conspirators started growing large quantities of marijuana at multiple properties that they owned or rented in the Fresno, California area. Defendant THANOUSONE VOLARAT and his co-conspirators routinely shipped east, primarily to Connecticut, parcels containing multiple kilograms of marijuana. The parcels were shipped via the USPS, UPS and FedEx. Initially the parcels were shipped via UPS until October 2010, when law enforcement seized a package containing approximately 30 pounds of marijuana. Thereafter, defendant THANOUSONE VOLARAT and his co-conspirators stopped using UPS and started using FedEx and the USPS. In addition, defendant THANOUSONE VOLARAT had at least six associates open UPS Store mailboxes at four separate UPS Stores in the greater Hartford, CT area to receive parcels of marijuana. Between October 2010 and July 2011, law enforcement seized eleven packages containing approximately 120 pounds of marijuana that were shipped by defendant THANOUSONE VOLARAT and his co-conspirators from the Fresno, California area to addresses primarily in Connecticut.

To finance the further purchase, manufacture and distribution of marijuana, proceeds from the sale of the marijuana were sent from Connecticut to the Fresno, California area and other places on the west coast through: (a) structured wires or money transfers; (b) structured deposits at bank branches in Connecticut immediately followed by structured withdrawals at bank branches on the west coast; and (c) human couriers who carried large amounts of marijuana proceeds on airline flights. Initially, the marijuana proceeds were transferred primarily through structured wires or money transfers from Connecticut to the west coast. Between September 2009 and May 2010, defendant THANOUSONE VOLARAT and his co-conspirators wired via MoneyGram over $320,000 in drug proceeds primarily

from Connecticut to the west coast. In 2010, due to the suspicious nature of the wires, MoneyGram placed defendant THANOUSONE VOLARAT and certain of his associates on MoneyGram's internal deny list.

After being placed on MoneyGram's internal deny list, defendant THANOUSONE VOLARAT and his co-conspirators started transferring significant amounts of marijuana proceeds through structured deposits at JPMorgan Chase bank branches in Connecticut immediately followed by structured withdrawals at Chase branches on the west coast. In January 2010, defendant THANOUSONE VOLARAT and an associate opened a bank account at JPMorgan Chase bank in Vancouver, Washington in the name of a fictitious business entity entitled Madora Lay Productions. To promote the further purchase, manufacture and distribution of marijuana and to conceal the nature of the funds, defendant THANOUSONE VOLARAT and his co-conspirators made structured deposits of marijuana proceeds into the Madora Lay Productions account and other accounts at JPMorgan Chase bank branches in Connecticut. Bank records show that the marijuana proceeds were almost always withdrawn from these accounts on the same day as the deposit from JPMorgan Chase bank branches on the west coast. Between January 2010 and August 2010, defendant THANOUSONE VOLARAT and his co-conspirators transferred approximately $1,000,000 in marijuana proceeds from the east coast to the west coast in this manner.

In August 2010, JPMorgan Chase bank closed these accounts due to the suspicious transactions. Thereafter, defendant THANOUSONE VOLARAT and his co-conspirators started using human couriers to transport marijuana proceeds on commercial airline flights from the east coast to the west coast. On September 16, 2010, for example, law enforcement seized $120,000 in marijuana proceeds from a co-conspirator, who was attempting to transport the marijuana proceeds on a commercial airline flight from Connecticut to defendant THANOSOUNE VOLARAT in California. In addition, defendant THANOUSONE VOLARAT and his co-conspirators started using new accounts at different banks to transfer cash to the west coast through structured financial transactions. In total, between October 2009 and September 2011, defendant THANOUSONE VOLARAT and his co-conspirators transferred from the east coast to the west coast approximately $3 million in marijuana proceeds for the purpose of funding the continued purchase, manufacture and distribution of marijuana. Further, the financial transactions were

conducted in a manner to conceal the nature, location, source, ownership and control of the proceeds.

DATED: 6/8/16, 2016

X [signature]
THANOUSONE VOLARAT, defendant